UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 1:23-cv-24875-LEIBOWITZ

AMERICAN SOCIAL IP, LLC and
721 LAS OLAS BLVD., INC.,

    *Plaintiffs,*

v.

**JERRY POWELL,**

    *Defendant.*

_____/

## ORDER

THIS CAUSE comes before the Court on Plaintiffs American Social IP, LLC and 721 Las Olas Blvd, Inc.'s, (collectively, "Plaintiffs") Motion for Summary Final Judgment ("the Motion"), filed on June 16, 2025. [Mot., ECF No. 73]. Plaintiffs' Motion was filed in response to this Court's prior order requiring all parties to submit briefing, pursuant to Rule 56(f) of the Federal Rules of Civil Procedure, regarding whether Plaintiffs are entitled to final judgment on both of Plaintiffs' claims. [ECF No. 72]. Defendant Jerry Powell ("Powell") filed a brief pursuant to Rule 56(f) arguing that summary judgment should be granted in his favor. [ECF No. 75].[1] After a review of the Motion, the record, and the applicable case law, the Motion is denied and summary judgment is granted in favor of Powell.

## PROCEDURAL HISTORY

Plaintiffs filed this case on December 22, 2023, against Powell and a John Doe Corporation. [Compl., ECF No. 1]. Plaintiffs then moved twice for *ex parte* Temporary Restraining Orders, which

---

[1] Plaintiffs requested that this Court strike Powell's filing. [ECF No. 77]. This Court takes no position on whether the filing should be stricken because the Court comes to the same conclusion with or without considering Powell's filing.

the Court denied for Plaintiffs' failure to establish that the Court should issue temporary restraining orders without notice to Defendants. [ECF Nos. 10, 11, 14, 16]. Powell first appeared in this case on March 14, 2024, and filed an Answer. [ECF No. 19]. Plaintiffs later learned the identity of the previously asserted John Doe Corporation and filed their First Amended Complaint on August 14, 2024, naming both Powell and First Street Hilmar, LLC ("First Street Hilmar") as Defendants. [First Am. Compl., ECF No. 41]. Plaintiffs sufficiently served First Street Hilmar with a copy of the First Amended Complaint and Summons to Michael Warda, the registered agent for service, but never appeared in the case. [Aff. of Deputy Sheriff Jared Silva, ECF No. 67-5]. After Powell failed to follow United States Magistrate Judge Jonathan Goodman's order requiring Powell to file an electronic notice listing an email address and telephone number for Plaintiffs' counsel for purposes of conferral regarding this case, Judge Goodman recommended that this Court enter a default against Powell. [ECF No. 56]. The Court agreed, and the Clerk of Court entered a default against Powell. [ECF Nos. 58, 59].

Plaintiffs then filed their Motion for Default Final Judgment on December 18, 2024. [ECF No. 61]. The Court denied the Motion without prejudice for three reasons. [ECF No. 66]. First, the Court questioned whether Plaintiffs provided the Court with adequate service of process on First Street Hilmar.[2] [*Id.* at 4–5]. Second, the Court did not believe that Plaintiffs established personal jurisdiction over First Street Hilmar because they failed to allege First Street Hilmar had sufficient "minimum contacts" in the state of Florida and that Section 48.193, Florida Statutes, did not apply to First Street Hilmar. [*Id.* at 5–6]. Lastly, the Court concluded that Plaintiff failed to show that Defendants violated the Lanham Act, and failed to show there was a likelihood of confusion between the marks. [*Id.* at 6–8]. Plaintiffs then filed an Amended Motion for Default Final Judgment. [ECF

---

[2] Plaintiffs later provided sufficient proof of service on First Street Hilmar in the Amended Motion. [Aff. of Deputy Sheriff Jared Silva, ECF No. 67-5].

2

No. 67]. The Court found that it had no personal jurisdiction over First Street Hilmar, and dismissed it. [ECF No. 70 at 5–8]. Next, the Court found that Plaintiffs, even on default, failed to show that Powell's use of "American Social" was likely to cause confusion between Plaintiffs' "American Social" mark, and thus Plaintiffs were not entitled to default judgment on their trademark infringement claim. [*Id.* at 8–14]. Finally, the Court found that Plaintiffs did not establish that they were entitled to default judgment on their claim under the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA"), because Plaintiffs failed to establish their first claim of trademark infringement. [*Id.* at 14–15].

Plaintiffs then filed a Motion to Alter or Amend Judgment or Motion for Relief from a Judgment or Order on May 20, 2025. [ECF No. 71]. Plaintiffs requested that this Court reconsider its prior order and grant the motion for default. [*Id.*]. On May 26, 2025, this Court denied that motion and ordered the parties to submit briefing on whether the Plaintiffs were entitled to final judgment on both of their counts, pursuant to Rule 56(f) of the Federal Rules of Civil Procedure. [ECF No. 72]. Plaintiffs then filed this Motion on June 16, 2025. [Mot.].

## BACKGROUND

Plaintiff American Social IP, LLC ("American Social IP") is a Florida limited liability company that "at all relevant times has been the owner of two of the federal trademarks to be enforced in this action[]" which have been used in commerce "since at least 2011." [Plaintiffs' Statement of Material Facts ("SMF"), ECF No. 74 ¶ 1]. American Social IP owns the marks "AMSO AMERICAN SOCIAL BAR AND KITCHEN" (U.S. Registration No. 6016227) and "AMSO" (U.S. Registration 5749498). [*Id.*]. Plaintiff 721 Las Olas Blvd., Inc., is a Florida profit corporation that "at all relevant times has been the owner/holder of the registered mark 'AMERICAN SOCIAL' (Word mark, U.S. Registration No. 7402201)[.]" [*Id.* ¶ 2].[3] Plaintiffs have operated a chain of restaurants named "American Social"

---

[3] The registration for this mark "inadvertently lapsed on December 8, 2023. The mark was, however, reinstated on May 28, 2024." [SMF ¶ 2]. This, however, does not preclude relief in favor

since 2011 and currently operate restaurants in five Florida cities. [*Id.* ¶ 5]. Plaintiffs claim they have "enormous internet presence and invest substantial resources in their marketing campaigns" which has helped them "establish[] a national presence through collaboration with global brands and other vendors." [*Id.*].

Powell is a resident of California and the owner of the restaurant at issue in this case. [*Id.* ¶ 4]. Powell, "without authorization or license from the Plaintiffs, opened a restaurant called 'American Social' in Ripon, California" on or about August 2023. [*Id.* ¶ 9]. Plaintiffs sent Powell two separate cease and desist letters "on or about November 21, 2023, and subsequently on December 6, 2023," demanding that he "completely cease use of Plaintiffs' marks." [*Id.* ¶ 11]. Powell utilized Plaintiffs' marks on social media between December 2023 until May 2024. [*Id.* ¶¶ 12–13]. Defendant "change[d] the restaurant's name from American Social to Ripon Social, but all or most of the older posts still utilize the American Social name and hashtag, which have remained available for the public to see and engage with." [*Id.* ¶ 13]. Defendant's social media and website "continue to contain Plaintiffs' American Social word mark[,]" and Defendant has not provided proof to Plaintiffs that they are no longer using the American Social name at their restaurant. [*Id.* ¶¶ 14–15].

## LEGAL STANDARD

A court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party moving for summary judgment "bears the initial burden to show the district court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial." *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991); *see also Celotex Corp. v. Catrett*,

---

of Plaintiffs because "[o]wnership of trademarks is established by use, not by registration; thus, a mark need not be registered in order to obtain protection." *Ares Def. Sys., Inc. v. Karras*, No. 615CV1107ORL22DAB, 2016 WL 7042957, at *3 (M.D. Fla. Mar. 10, 2016), *report and recommendation adopted*, 2016 WL 1554127 (M.D. Fla. Apr. 18, 2016) (cleaned up).

477 U.S. 317, 323 (1986). Those materials may include, "depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c)(1)(A). "Only when that burden has been met does the burden shift to the non-moving party to demonstrate that there is indeed a material issue of fact that precludes summary judgment." *Clark*, 929 F.2d at 608.

A court may, after giving the parties notice and a reasonable time to respond, "(1) grant summary judgment for a nonmovant; (2) grant the motion on grounds not raised by a party; or (3) consider summary judgment on its own after identifying for the parties material facts that may not be genuinely in dispute." Fed. R. Civ. P. 56(f). Accordingly, "a district court may enter summary judgment *sua sponte* if the parties are given adequate notice that they must present all of their evidence." *Flood v. Young Woman's Christian Ass'n of Brunswick, Georgia, Inc.*, 398 F.3d 1261, 1267 (11th Cir. 2005); *see Awodiya v. Ross Univ. Sch. of Med.*, No. 18-cv-60482, 2019 WL 13255301, at *3 (S.D. Fla. May 16, 2019) ("Federal Rule of Civil Procedure 56(f) equips a federal district court with the authority to act on its own initiative in considering whether summary judgment is appropriate.").

A "district court cannot base the entry of summary judgment on the mere fact that the motion was unopposed, but, rather, must consider the merits of the motion." *United States v. One Piece of Real Prop. Located at 5800 SW 74th Ave., Miami, Fla.*, 363 F.3d 1099, 1101 (11th Cir. 2004). The court "need not *sua sponte* review all of the evidentiary materials on file at the time the motion is granted, but must ensure that the motion itself is supported by evidentiary materials." *Id.* (cleaned up). "At the least, the district court must review all of the evidentiary materials submitted in support of the motion for summary judgment. In addition, so that there can be an effective review of the case on appeal, the district court's order granting summary judgment must indicate that the merits of the motion were addressed." *Id.* at 1101–02 (cleaned up).

A defendant against whom default is entered "admits the plaintiff's well-pleaded allegations of fact[.]" *Nishimatsu Constr. Co. v. Houston Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975). However, an entry of default against a defendant does not *per se* entitle the plaintiff to judgment against the defendant. *See Tissone v. Osco Food Servs., LLC*, No. 19-cv-61358, 2021 WL 1529915, at *1–2 (S.D. Fla. Feb. 10, 2021) (citing *Nishimatsu*, 515 F.2d at 1206); *see Tyco Fire & Sec., LLC v. Alcocer*, 218 F. App'x 860, 863 (11th Cir. 2007).

**DISCUSSION**

This Court ordered the parties to brief whether the Plaintiffs are entitled to final judgment as to both of Plaintiffs' counts: (1) trademark infringement under 15 U.S.C. § 1114, and (2) violation of FDUTPA, Fla. Stat. § 501.201, *et seq.* [ECF No. 72 at 5]. Plaintiffs' claims are based on the Defendants allegedly "infringing Plaintiffs' trademarks . . . causing a likelihood of confusion . . . which is likely to and/or has misled consumers." [First Am. Compl. ¶ 36; *see id.* ¶ 28]. The Court will first address whether Plaintiffs have sufficient evidence to make out a claim of trademark infringement and will then address whether Plaintiffs evidence is sufficient to prove a claim brought under FDUTPA.

I.   Count I — Trademark Infringement

Under the Lanham Act, a party is liable for trademark infringement if, without consent, he uses "in commerce any reproduction, counterfeit, copy, or colorable imitation of a registered mark . . . which such use is likely to cause confusion, or to cause mistake, or to deceive." 15 U.S.C. § 1114(1)(a). "[I]n order to prevail on a federal trademark infringement claim under § 1114, [plaintiffs] ha[ve] to demonstrate (1) that [their] marks had priority over [Defendants'] marks, and (2) that [Defendants'] marks were likely to cause consumer confusion." *Fla. Int'l Univ. Bd. Of Trs. v. Fla. Nat'l Univ., Inc.*, 830 F.3d 1242, 1255 (11th Cir. 2016). The first factor is not in dispute in this case, as Plaintiffs have sufficiently shown that the alleged infringed marks are registered with the United States Patent and Trademark Office. [ECF No. 41-1; ECF No. 74-1]. Registered marks are considered to have

6

unlimited rights, nationwide, and afforded "priority over all future users of confusingly similar marks." *Tana v. Dantanna's*, 611 F.3d 767, 780 (11th Cir. 2010). Therefore, this Court only needs to address the second factor, whether the Defendant's marks were likely to cause consumer confusion.

The following factors are relevant in determining whether there is a likelihood of confusion:

(1) the strength of the allegedly infringed mark; (2) the similarity of the infringed and infringing marks; (3) the similarity of the goods and services the marks represent; (4) the similarity of the parties' trade channels and customers; (5) the similarity of advertising media used by the parties; (6) the intent of the alleged infringer to misappropriate the proprietor's good will; and (7) the existence and extent of actual confusion in the consuming public.

*See FCOA LLC v. Foremost Title & Escrow Servs. LLC*, 57 F.4th 939, 947 (11th Cir. 2023), *cert. denied*, 144 S. Ct. 103 (2023) (citing *Fla. Int'l Univ. Bd. Of Trs.*, 830 F.3d at 1255); *see All. Metals, Inc., of Atlanta v. Hinely Indus., Inc.*, 222 F.3d 895, 907 (11th Cir. 2000); *AmBrit, Inc. v. Kraft, Inc.*, 812 F.2d 1531, 1538 (11th Cir. 1986). While the first and the seventh factors are the most important, "[n]o one factor is determinative for finding a likelihood of confusion." *Specialized Bicycle Components, Inc. v. In-style1820*, No. 16-62711-CIV, 2017 WL 6949237, at *3 (S.D. Fla. Mar. 23, 2017) (citing *Sun-Fun Prods., Inc. v. Suntan Research & Dev. Inc.*, 656 F.2d 186, 191 (5th Cir. 1981)); *See FCOA LLC*, 57 F.4th at 947.

As for the first factor, the strength of American Social's mark, Plaintiffs have shown that their mark is strong. "There are four categories of marks: (1) generic, (2) descriptive, (3) suggestive, and (4) arbitrary." *Frehling Enters., Inc. v. Int'l Select Grp., Inc.*, 192 F.3d 1330, 1335 (11th Cir. 1999). An "arbitrary" mark (i.e., a word or phrase that bears no relationship to the product) is the strongest of the four categories. *Id.* at 1335–36. The term "American Social," for these purposes, bears no actual relationship to the services provided—food and drink services.[4] Therefore, this Court finds that the

---

[4] A "social" is a "social gathering or party, especially of or as given by an organized group." *Social*, Dictionary.com, https://www.dictionary.com/browse/social (accessed June 26, 2025). While it is common for restaurants to use the word "social" in their names, based on this definition, there is no inherent connection between food and drink service and a social gathering.

7

Plaintiffs' mark is "arbitrary" and is thus strong. Accordingly, the first factor weighs in Plaintiffs' favor.

However, the second factor—the similarity between the Plaintiffs' mark and the allegedly infringing mark—weighs in Defendant's favor. "The similarity of design is determined by considering the overall impression created by the marks as a whole rather than simply comparing individual features of the marks. This consideration includes a comparison of the appearance . . . and meaning of the marks, as well as the manner in which the marks are used." *John H. Harland Co. v. Clarke Checks, Inc.*, 711 F.2d 966, 975 (11th Cir. 1983) (cleaned up).

The similarity of design test has been described as "really nothing more than a subjective eyeball test. The similarity of design is determined by considering the overall impression created by the mark as a whole rather than simply comparing individual features of the marks." *AmBrit, Inc.,* 812 F.2d at 1540 (cleaned up).[5]  Upon reviewing the two logos, while the words used are the same, the designs are completely different:

 

---
[5] Plaintiffs argue that the "subjective eyeball test" in *Ambrit* is inapplicable to the trademark analysis. [Mot. at 3 n.3]. While this test is not dispositive to the conclusion that Plaintiffs fail to establish a claim of trademark infringement, courts, including the Eleventh Circuit have used the "subjective eyeball test" in trademark infringement cases.  *See FCOA LLC*, 57 F.4th at 952; *Aspire Health Partners, Inc. v. Aspire MGT LLC*, No. 6:24-CV-1578-JSS-EJK, 2024 WL 5169936, at *9 (M.D. Fla. Dec. 19, 2024) (using the "subjective eyeball test" for a trademark infringement claim); *MC3 Invs. LLC v. Loc. Brand, Inc.*, 661 F. Supp. 3d 1145, 1162 (N.D. Fla. 2023) (same).  Indeed, the pre-*Bonner* Fifth Circuit in 1980 applied the "subjective eyeball test" to a trademark infringement claim for the similarity of design factor.  *See Exxon Corp. v. Texas Motor Exch. of Houston, Inc.*, 628 F.2d 500, 504 (5th Cir. 1980).

[American Social Bar and Kitchen, https://www.americansocialbar.com (last visited April 17, 2025); Ripon Social (@riponsocial), Instagram (March 1, 2024), https://www.instagram.com/p/C3-zlE_Sivl/.].[6]

The two logos are substantially different—the logos, even if one just looks at the words used, are in completely different fonts and have different formats. Plaintiffs' words are next to each other in the same font under a U-shaped design reflecting the American flag surrounded by wheat wreath symbols, while Defendants' logo uses a different line for each word, which are in different fonts, with lines surrounding the word "social." Further, in Defendant's mark, there is a star above the "i" while there is none in Plaintiffs' mark, and Plaintiffs' font is in all capitalized letters while in Defendant's mark, only the "A" is capitalized and all other letters are in cursive lower case font. Yes, the words are the same, but Plaintiffs admit that Defendant's "primary form of infringement" was a "design mark." [Mot. at 8 n.6]. Because the dominant part of Plaintiffs' mark is their design, not the words themselves, there is less likelihood that consumers, when viewing these two marks, would confuse the two. *Cf. FCOA LLC*, 57 F.4th at 953 (finding that consumers would be likely to confuse two marks which used the word "Foremost" because that word was the dominant part of both marks).

While it is true that words in a mark are generally accorded greater weight, "there is no general rule that the letter portion of the mark will form the dominant portion of the mark. Marks, therefore, must be considered on a case-by-case basis." *In re Viterra Inc.*, 671 F.3d 1358, 1362–63 (Fed. Cir. 2012); *cf. Alzheimer's Found. of Am., Inc. v. Alzheimer's Disease & Related Disorders Ass'n, Inc.*, 796 F. Supp. 2d 458, 465 (S.D.N.Y. 2011). "Furthermore, the mere fact that two marks contain the same word does not, in itself, make the marks substantially similar." *MC3 Invs. LLC v. Loc. Brand, Inc.*, 661 F.

---

[6] Plaintiffs include other pictures of their trademark and Defendant's allegedly infringing mark in their SMF. [*See* ECF Nos. 74, 74-6]. Because the pictures they provide are substantially the same but harder to view, the Court uses these pictures as examples.

9

Supp. 3d 1145, 1162 (N.D. Fla. 2023) (cleaned up) (citing *Armstrong Cork Co. v. World Carpets, Inc.*, 597 F.2d 496, 502 (5th Cir. 1979)) ("The mere fact that Armstrong's proposed corporate name contains the word World does not, of itself, make the name 'substantially similar' to World's trademark. A mark must be viewed in its entirety and in context. It is the overall impression that counts.").

Having conducted a "subjective eyeball test," this Court finds that "consumers will have little difficulty distinguishing between them—a finding that's solidified by the dissimilar [designs] and logos and the ways in which the trade[marks] function in the actual market (*i.e.*, [restaurants thousands of miles apart from each other])." *Vital Pharms., Inc. v. Monster Energy Co.*, 553 F. Supp. 3d 1180, 1266 (S.D. Fla. 2021) (cleaned up).

Additionally, the Court notes that the words used here—American and Social—are extremely common words. It is thus unsurprising that an individual or entity may unknowingly use the words together. Any trademark infringement analysis should consider whether the words used are distinctive or generic, as distinctive words are "far more important than generic words like [American] and [social]." *FCOA LLC*, 57 F.4th at 953. The overall effect of the two marks is key, and the designs of the two marks are sufficiently different such that a consumer should be able to distinguish them.

The third factor—similarity between the services provided—weighs in Plaintiffs' favor. Both American Social and Ripon Social are restaurants. Thus, the public could think they originate from a single source. *See id.* at 953–54.

The fourth factor—similarity of trade channels and customers—focuses on "where, how, and with whom the parties transact with their actual and potential customers." *Id.* at 954 (cleaned up). "The primary focus in this inquiry is on the overlap of the customer bases, because the greater the overlap, the greater the likelihood that consumers will be exposed to both marks and become confused." *Id.* (citing *Savannah Coll. of Art & Design, Inc. v. Sportswear, Inc.*, 983 F.3d 1273, 1284 (11th Cir. 2020)). "Dissimilarities between the retail outlets for and the predominant consumers of

10

plaintiff's and defendants' goods lessen the possibility of confusion[.]" *Sovereign Mil. Hospitaller Ord. of Saint John of Jerusalem of Rhodes & of Malta v. Fla. Priory of the Knights Hospitallers of the Sovereign Ord. of Saint John of Jerusalem*, 809 F.3d 1171, 1188 (11th Cir. 2015). Here, the Court finds that "geographic considerations are indeed relevant and demonstrate a smaller likelihood of confusion." *Tana*, 611 F.3d at 781. The locations of Plaintiffs' restaurants are only in Florida and have submitted no evidence that they have taken steps to move out of Florida or to open restaurants in California.[7] Ripon, California, a town of approximately 16,000 people, is nearly 3,000 miles away from the closest American Social restaurant in either Tampa or Orlando, Florida, *See QuickFacts, Ripon City, California,* United States Census Bureau, https://www.census.gov/quickfacts/fact/table/riponcitycalifornia/PST045224 (accessed June 26, 2025); Google Maps, Ripon, California to Tampa, Florida, https://www.google.com/maps/dir/Ripon,+CA+95366/Tampa,+Florida (accessed June 26, 2025). "Thus, at present, the parties' restaurants coexist in remote markets, geographically and otherwise."[8]

---

[7] In their Motion, Plaintiffs cite an attached affidavit stating that they have plans to expand outside Florida, including to California. [*See* Mot. at 9]. However, the affidavit merely says that Plaintiffs discussed "expansion" with a mergers and acquisition firm based out of California. [ECF No. 73-1 ¶ 16]. Such a statement alone is insufficient to show that Plaintiffs actually are expanding to California. With no other evidence presented to this Court, Plaintiffs have failed to show that they are expanding to California.

[8] While the secondary meaning test applies only to "descriptive" trademarks, not arbitrary ones, the test is relevant here due to the lack of geographic proximity between the restaurants, and Plaintiffs fail to show that their "American Social," a restaurant with five locations exclusively in Florida, has acquired a secondary meaning in the United States as a whole, or in Ripon, California. "A name has acquired secondary meaning when the primary significance of the term in the minds of the consuming public is not the product but the producer." *Welding Servs., Inc. v. Forman*, 509 F.3d 1351, 1358 (11th Cir. 2007) (cleaned up). Plaintiffs merely argue that because they have spent significant resources on advertising, that the name "American Social" has acquired secondary meaning. [Mot. at 5–6]. However, a factor a court should use to determine whether a name has acquired secondary meaning is the extent to which the public "actually identifies the name with plaintiff's product or venture." *Conagra, Inc. v. Singleton*, 743 F.2d 1508, 1513 (11th Cir. 1984). Plaintiffs have submitted *no* evidence that the public at large actually associated the name "American Social" with their restaurants.

11

*Tana*, 611 F.3d at 781.  Further, of the ten reviews on "Yelp" of Ripon Social which Plaintiffs provided to this Court, all but one reviewer is from California[9], and the remaining reviewer is from Pennsylvania. [ECF No. 74-5 at 3–8].  Such a fact supports a finding that Plaintiffs' Florida consumer base and Ripon Social's consumer base are distinct.

As the "primary focus" of this factor is on the overlap of the customer bases—which are *thousands* of miles apart—it is clear to this Court that this factor weighs extremely heavily in Powell's favor.  Additionally, Ripon Social operates in a town of 16,000 people while American Social operates in five of Florida's largest cities.  Simply put, the overlap of customers in a small town in California, thousands of miles away, to the customers of five restaurants in in Florida is likely to be miniscule, if not non-existent.  Plaintiffs have put forward *no* evidence that there is an overlap of customer bases, and this Court finds that none exists.  Accordingly, the fourth factor, which, on these facts, is an important factor, weighs heavily against finding a likelihood of confusion.

The fifth factor—similarity of advertising—weighs against a finding of likelihood of confusion.  This factor "focuses on the audience reached by the advertisements of the parties." *FCOA LLC*, 57 F.4th at 955.  Plaintiffs have shown that both the Plaintiffs and Powell use social media to advertise their businesses.  Plaintiffs claim that between January 1, 2020, and June 9, 2025, they spent $4,133,801.77 on marketing.  [Mot. at 5].  Plaintiffs don't, however, state how much money they spent on social media marketing—the only basis for the similarity of advertising between Plaintiffs and Powell.  [*Id.* at 10].  The fact that both Plaintiffs and Powell use social media advertising, however, is the only similarity.  As of August 2023, Plaintiffs have a total lifetime view of coverage on social media of 2.52 million.  [Mot. at 6].  Meanwhile, per the Plaintiffs, Ripon Social has exactly 738 individual

---

[9] One reviewer is from "Ontario, CA[.]"  [ECF No. 74-5 at 6–7].  Because Ontario, California exists, and the remaining reviews specify the city from in the review resides, this Court assumes that reviewer is from Ontario, California (a city), not Ontario, Canada (a province).

12

followers and 354 individual likes on their "Facebook" page, and 851 individual followers on their Instagram page. [ECF No. 74-5 at 20, 22]. One of Ripon Social's posts on "Facebook" which Plaintiffs provided to this Court showed that it received seven "likes," a *far* cry from the 2.52 million lifetime views of Plaintiffs. [*Id.* at 21]. Other "Facebook" posts provided to this Court fared no better. [*See* ECF No. 41-2].

While both Plaintiffs and the Ripon Social restaurant use social media, the similarity of advertising ends there. Plaintiffs have put forward no evidence that shows that the audiences of Plaintiffs' marketing and of Ripon Social's marketing overlaps in any way. Rather, based on the evidence provided by Plaintiffs, there is almost no overlap. Accordingly, this Court finds that the fifth factor weighs in favor of Powell.

The sixth factor, defendant's intent, also implies a lack of likelihood of confusion. Plaintiffs make conclusory statements that Powell "intentionally misappropriated" Plaintiffs' marks. [Mot. at 10]. Plaintiffs have put forward *no* evidence that Powell was ever aware of Plaintiffs' marks or the restaurant, American Social, prior to using the mark, which weights against the Plaintiffs on this factor. *See Tana*, 611 F.3d at 778. Plaintiffs then argue that because Powell became aware of Plaintiffs' mark when he received a cease-and-desist letter from Plaintiffs that he intended to misappropriate Plaintiffs' mark. However, as Plaintiffs admit, Powell's response was to "rename the restaurant [to] 'Ripon Social[']" just a few months after this lawsuit was filed. [Mot. at 10]. If anything, this shows that Powell did *not* intend to misappropriate Plaintiffs' mark because once he learned of it, he changed the restaurant's name. Plaintiffs then state that Powell continued to use the name "American Social" after changing the name—but Plaintiffs' submitted facts only support a finding that Powell did not take down previous "American Social" posts on social media after the name was changed. [*See* SMF ¶¶

11–19].[10]  The only fact which supports Plaintiffs' argument here is that Powell, by failing to respond to Plaintiffs' request for admissions, admitted that he was aware of Plaintiffs' marks prior to opening Ripon Social.  [SMF ¶ 25].[11]  However, as discussed, because other evidence belies the finding that Powell intended to infringe on Plaintiffs' marks, this admission is not dispositive of this factor.  Accordingly, the Court finds that the sixth factor weighs in favor of no likelihood of confusion.

Lastly, the actual confusion factor.  "The most persuasive evidence in assessing the likelihood of confusion is proof of actual confusion."  *Alliance Metals, Inc. v. Hinely Indus., Inc.*, 222 F.3d 895, 907 (11th Cir. 2000).  Plaintiffs concede they "do not have any direct evidence of actual confusion[,]" but ask this Court to infer confusion because some customers of Ripon Social called the restaurant "American Social" on "Yelp" after Powell changed the name to "Ripon Social."  [Mot. at 11].  Plaintiffs, again, have produced no evidence that any customers in Florida actually were confused by the Defendants' restaurant in Ripon, California, or that any customers in Ripon, California, actually thought they were patronizing a restaurant associated with the Plaintiffs.  Without any evidence of actual confusion, this factor clearly, and heavily, weighs in Powell's favor.

Plaintiffs are correct, however, that by virtue of failing to respond to a request for admission Powell, proceeding *pro se*, admitted that he has "received questions from customers confused about or inquiring on the relationship between" Ripon Social and American Social.  [SMF ¶ 34]; *see* Fed. R. Civ. P. 36.  While this would support a finding of actual confusion, because Plaintiffs concede that

---

[10]     As for the period between December 2023, and May 2024, after a cease-and-desist letter from Plaintiffs to Powell, during which time Powell continued to advertise the restaurant as "American Social," it is notable that Plaintiffs' registration of its trademark "American Social" "inadvertently lapsed on December 8, 2023.  The mark was, however, reinstated on May 28, 2024."  [SMF ¶ 2].  Thus, when Plaintiffs first sent Powell a cease-and-desist letter, it had no registered work mark for the term "American Social."  This timeline matches up exactly with Powell's decision to rename his restaurant to Ripon Social once Plaintiffs' mark was reinstated.

[11]     It is unclear whether this statement means that Powell was aware of Plaintiffs' marks before Powell *changed the name* to Ripon Social or before he opened the restaurant Ripon Social, formerly known as American Social.

they do not have any direct evidence of actual confusion and provided this Court with no other evidence, this admission is only slightly influential on this factor.

Further, in addition to the seven factor test, the Eleventh Circuit has indicated that geographic proximity of use may be a "new factor[]" that "merit[s] consideration in determining whether there is a likelihood of confusion." *Tana*, 611 F.3d at 780 (cleaned up) ("[O]ur case law already establishes that geographic considerations may be relevant to the likelihood-of-confusion analysis, even where we have not articulated this consideration as a separate factor.") (first citing *St. Luke's Cataract & Laser Inst., P.A. v. Sanderson*, 573 F.3d 1186, 1209 (11th Cir. 2009), then citing *Alliance Metals, Inc.*, 222 F.3d at 908). While this Court considered the geographic proximity of Ripon Social and American Social in previous factors, it writes separately here to underscore how geographically remote the two restaurants are, and that this is highly influential in the determination that no likelihood of confusion exists. Accordingly, "the record [] establishes that [Powell] currently operate[s] [a] restaurant[] only in the [Ripon, California] area and that the mark of neither party is known by the customers in the other's market." *Id.* at 781. "Thus, at present, the parties' restaurants coexist in remote markets, geographically and otherwise. On such a record, geographic considerations are indeed relevant and demonstrate a smaller likelihood of confusion." *Id.*

\*   \*   \*

Considering all seven factors and geographic considerations, not only have Plaintiffs failed to show that Powell's use of "American Social" is likely to cause confusion, but their own evidence strongly supports the opposite conclusion—that the likelihood-of-confusion factor is unambiguously not met. Thus, no reasonable jury could find that Powell's use of Plaintiffs' mark would be likely to cause confusion in the market. Powell is thus entitled to summary judgment on Count I.

While this Court engaged in the substantive likelihood-of-confusion analysis, it also underscores that Plaintiffs failed to convince this Court that *Powell* committed any action that

15

amounted to trademark infringement. The only fact in the record that supports this conclusion is that Powell, by virtue of failing to respond to Plaintiffs' requests for admissions, admitted that he "has an ownership interest" in, is affiliated with, and is a manager of Ripon Social. Taking as true the statements in Plaintiffs' requests for admission to Powell to which Powell did not respond, the Court gleans the following: Powell has some type of ownership interest in both Ripon Social and First Street Hilmar LLC, and acts as Ripon Social's manager, and posed in Ripon Social's social media accounts. [SMF ¶¶ 20, 21, 23, 37]. Also, First Street Hilmar LLC is a corporation[12] which has an interest in Ripon Social. [*Id.* ¶ 24]. What is unclear is how Powell *personally* can be liable for the infringing marks of the restaurant Ripon Social, even if he did post from Ripon Social's account. Plaintiffs have offered this Court no evidence that Powell personally should be held liable, even if he owned or participated in the operation of the restaurant. [*Id.* ¶¶ 20, 26]; *cf. Luxottica Grp., S.p.A. v. Airport Mini Mall, LLC*, 932 F.3d 1303, 1317 (11th Cir. 2019) (finding that the evidence presented to a jury was sufficient to show that individual defendants had at least constructive knowledge of direct infringement of others). Because Plaintiffs fail to establish that Powell engaged in any sort of infringement, or had any knowledge of the alleged infringement, Plaintiffs are not entitled to relief from Powell, even if this Court's finding of no likelihood of confusion is erroneous.

II.     Count II — FDUTPA

"[A] claim for damages under FDUTPA has three elements: (1) a deceptive act or unfair practice; (2) causation; and (3) actual damages." *Kia Motors Am. Corp. v. Butler*, 985 So. 2d 1133, 1140 (Fla. Dist. Ct. App. 2008). Plaintiffs only argument here is that "[t]rademark infringement is an unfair and deceptive trade practice that constitutes a violation of FDUTPA." [Mot. at 12 (citing *TracFone*

---

[12] Even though First Street Hilmar LLC includes the term "LLC", which normally is associated with a limited liability company, because this Court must take as true all statements to which Powell did not respond, Fed. R. Civ. P. 36(a)(3), the Court takes as true that First Street Hilmar is a corporation.

*Wireless, Inc. v. GSM Grp.*, 555 F.Supp.2d 1331 (S.D. Fla. 2008))]. Accordingly, because this Court found that Powell is entitled to summary judgment on Count I, concluding that Plaintiffs fail as a matter of law to make out a claim of trademark infringement, Plaintiffs also fail as a matter of law to make out a claim under FDUTPA. Further, "FDUTPA applies only to actions that occurred within the state of Florida[,]" and all of Powell's actions occurred in California. *Five for Ent. S.A. v. Rodriguez*, 877 F. Supp. 2d 1321, 1330 (S.D. Fla. 2012); *cf. Zarfati v. Artsana USA, Inc.*, No. 1:24-CV-21372-KMM, 2025 WL 373081, at *12 (S.D. Fla. Jan. 15, 2025) (finding that a Florida plaintiff could sue an out-of-state defendant under FDUTPA where the "allegedly deceptive acts and unfair practices were at a minimum aimed at consumers in Florida.").

Thus, summary judgment is granted as to Count II in favor of Powell.

## CONCLUSION

Accordingly, for the foregoing reasons, it is **ORDERED AND ADJUDGED** that summary judgment on Counts I and II is **GRANTED** in favor of Defendant Jerry Powell. Plaintiffs' Motion for Summary Final Judgment [**ECF No. 73**] is **DENIED**. The Clerk of Court is directed to **CLOSE** this case.

**DONE AND ORDERED** in the Southern District of Florida on July 9, 2025.

_____
DAVID S. LEIBOWITZ
UNITED STATES DISTRICT JUDGE

cc:     counsel of record